IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL JAMES SHUKRY,

                Petitioner,

      vs.

GEORGE A. NEOTTI,[1] Warden, Richard J. Donovan Correctional Facility,

                Respondent.

No. 2:09-cv-00669-JKS

MEMORANDUM DECISION

Michael James Shukry, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2254.  Shukry is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Richard J. Donovan Correctional Facility. Respondent has answered, and Shukry has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In February 2004 Shukry was convicted by a jury in the Sacramento County Superior Court of second-degree murder under California Penal Code § 187(a) and assault on a child under the age of eight years resulting in death under California Penal Code § 273ab(a).  The trial court sentenced Shukry to an indeterminate prison term of twenty-five years to life.  The California Court of Appeal, Third Appellate District, affirmed Shukry's conviction and sentence

---

[1] George A. Neotti, Warden, Richard J. Donovan Correctional Facility, is substituted for M. S. Evens, Warden, Salinas Valley State Prison.  Fed. R. Civ. P. 25(d).

in an unpublished decision,[2] and the California Supreme Court denied review on January 3, 2007.

On March 3, 2008, Shukry filed a petition for habeas relief in the Sacramento County Superior

Court, which was denied in an unreported, reasoned decision on April 24, 2008.  On November

20, 2008, Shukry filed a petition for habeas relief in the California Court of Appeal, Third

Appellate District, which was summarily denied without opinion or citation to authority on

December 11, 2008, and the California Supreme Court denied review on February 18, 2009.

Shukry filed a second-round petition for habeas relief in the California Supreme Court on

January 26, 2009, which was denied on February 18, 2009, citing *In re Clark*, 855 P.2d 729 (Cal.

1993).  Shukry filed his Petition for relief in this Court on February 23, 2009.

The factual basis underlying Shukry's conviction as recited in the opinion of the

California Court of Appeal:

> On December 17, 2001, seven-year-old McImely Dearing fell off a fence and was admitted to the hospital with a head injury.  Other than a scrape on his face, following his release from the hospital, McImely appeared fine.  [Shukry] was the live-in boyfriend of McImely's mother, Carol Roberts.
>
> On December 26, 2001, McImely was at the home of a neighbor, Gayle Linniger, playing with her children.  Although he ate his dinner slowly, Linniger did not notice any signs that McImely was in pain or discomfort and she did not see any bruises on him.
>
> On that same day, [Shukry] had a dispute with his employer and quit his job.
>
> Later that evening, [Shukry] told Carol there was something wrong with McImely.  Carol found McImely in his pajamas on the floor in his bedroom.  She called 911.
>
> [Shukry] initially told Carol he had heard a "bump" and went upstairs and found McImely on the floor.  He noticed the boy was making a "snoring" sound which "wasn't right."  [Shukry] also told the police this story initially.
>
> William Porter, an emergency medical technician responded to the 911 call.  He found McImely unconscious, with irregular breathing and a frothy sputum coming from his mouth.

---

[2] *People v. Shukry*, No. C046256, 2006 WL 2678437 (Cal. Ct. App. Sept. 19, 2006).

The next day, [Shukry] told Carol he had been spinning McImely around. A few days later, he told Carol and the police that while he was spinning McImely, McImely struck his head on the couch. He said he did not reveal this detail earlier because he was scared.

When he was interviewed by the police on the morning of December 27, [Shukry] had a scrape on his left arm, several scrapes and cuts on his chest and scrapes and cuts on his left hand.

McImely died at the hospital. An autopsy was performed by forensic pathologists, Doctors Stephany Fiore and Mark Super. They found the cause of McImely's death to be multiple blows to the head, causing subdural hemorrhaging and immediate unconsciousness. McImely was bruised "virtually from head to toe and on every surface of his body[.]" McImely had suffered 39 separate acute impacts to his body and was bruised from head to toe, including the penis and pubic area. Injuries on his hands and feet were consistent with defensive injuries. McImely also had an injury to his abdomen which resulted in a small bowel hemorrhage.

The doctors concluded the injuries would not be caused by a child's normal activities. Upon examination, Dr. Fiore found McImely had suffered a subdural hematoma and retinal bleeding. She also found a traumatic axonal injury which caused the brain to swell. To sustain these kinds of injuries, McImely had to have suffered a blow of significant force to his head. She also concluded he had not sustained a subdural hematoma as a result of the fall on December 17. The abdomen injury was also one which would not occur naturally or by accident, but rather could be caused only by a kick or a punch to the abdomen. Another indication that the injuries were intentionally inflicted was the existence of an optic nerve sheath hemorrhage.

Dr. Angela Rosas also examined McImely. Based on the nature and extent of his injuries, she concluded he had suffered a severe physical assault, consistent with a beating with hands, feet and probably. His injuries from this beating led to his death.[3]

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Shukry raises five grounds:  (1) ineffective assistance of counsel (failure to present exculpatory evidence); (2) the trial court failed to query the jurors on the issue of jury misconduct; (3) the trial court improperly denied Shukry access to information identifying the jurors; (4) the trial court erred in denying Shukry's motion for a new trial on the basis of jury

---

[3] *Shukry*, 2006 WL 2678437 at *1-2 (alterations added).  Except for the petitioner's name, this appears exactly as it does in the original.

misconduct; and (5) the trial court erred in allowing into evidence certain inflammatory and gruesome photographs.  Respondent contends that the Petition is untimely and that Shukry's second, third, and fourth grounds are unexhausted.  Respondent raises no other affirmative defense.[4]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the

---

[4] *See* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-*

"unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

---

*Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[14]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[16]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[17]

---

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[15] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal.  If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[18] This is considered as the functional equivalent of the appeal process.[19]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[20]  This presumption applies to state-trial courts and appellate courts alike.[21]

## IV.  DISCUSSION

### A.      Timeliness

Respondent has raised timeliness as an affirmative defense.  Respondent previously moved for dismissal on the basis that the Petition was untimely.[22]  This Court, adopting the Findings and Recommendations of the Magistrate Judge, denied that motion.[23]

---

[18] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[19] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[20] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[21] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

[22] Docket No. 10.

[23] Docket No. 20.

Under the law of the case "doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court or a higher court in the [same] case."[24] However, the law of the case doctrine is not a shackle without a key.  "As long as a district court retains jurisdiction over a case," it has inherent power to reconsider and modify an interlocutory order for sufficient cause.[25]  That inherent power is not unfettered, however.  A court may depart from the law of the case doctrine where, "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."[26]

Other than to simply affirmatively allege the untimeliness of the federal petition,[27] Respondent provides no basis upon which this Court could reconsider its prior decision. Accordingly, the Court declines to address the issue again.

**B.     Exhaustion**

Respondent contends that, although Shukry presented his second and third grounds on direct appeal, he presented them solely in terms of state, not federal constitutional, law.  With respect to his fourth ground, Respondent contends that it was not presented to the state courts at

---

[24] *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (citations omitted).

[25] *City of Los Angeles, Harbor Div. v. Santa Monica*, 254 F.3d 882, 885 (9th Cir. 2001).

[26] *Jeffries v. Wood,* 114 F.3d 1484, 1489 (9th Cir.1997) (en banc) (internal quotation marks and citations omitted), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995) (citing *Merrit v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991); *see also School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted).

[27] Docket No. 10, at 3-6.

all.  Therefore, Respondent argues that Shukry has not properly exhausted his state-court

remedies as to those claims.  In his Traverse, Shukry acknowledges that his second and third

grounds were not presented in federal constitutional terms.  Shukry argues, however, that he

presented those grounds, as well as his fourth ground, in federal constitutional terms in his

second-round state habeas petition filed in the California Supreme Court.

     This Court may not consider claims that have not been fairly presented to the state

courts.[28]  "[E]xhaustion of state remedies requires the petitioner to fairly present federal claims to

the state courts in order to give the state the opportunity to pass upon and correct alleged

violations of its prisoners' federal rights."[29]  A petitioner fairly presents a claim to the state court

for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper

forum; (2) through the proper vehicle; and (3) by providing the proper factual and legal basis for

the claim.[30]  A petitioner must alert the state courts to the fact that he is asserting a federal claim

in order to fairly present the legal basis of the claim.[31]  In the Ninth Circuit, a petitioner must

make the federal basis of the claim explicit either by referencing specific provisions of the

Federal Constitution or statutes, or by citing to federal case law.[32]  Mere similarity of claims

_____

[28] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).

[29] *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (internal quotation marks and citation omitted).

[30] *See* 28 U.S.C. § 2254(e); *Weaver v. Thompson,* 197 F.3d 359, 364 (9th Cir. 1999).

[31] *Duncan,* 513 U.S. at 365-66 ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.").

[32] *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000), *amended and superseded by Lyons v. Crawford,* 247 F.3d 904 (9th Cir. 2001).

between a state-law claim and a federal-law claim is insufficient for exhaustion purposes.[33]  In

order to present the substance of a claim to a state court, the petitioner must reference a specific

federal-constitutional provision "as well as a statement of facts that entitle the petitioner to

relief."[34]  A mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to

present the substance of a constitutional claim to the state courts.[35]  A petitioner who cites one

clause of a constitutional amendment does not exhaust a claim under a different clause of the

same constitutional amendment.[36]  If a petitioner cites a state case that analyzes a federal

constitutional issue, that federal issue is fairly presented.[37]  The required level of explicitness is

the same for *pro se* petitioners and petitioners who are represented by counsel.[38]

---

[33] *See Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

[34] *Gray v. Netherland,* 518 U.S. 152, 162-163 (1996) (citing *Picard v. Conner*, 404 U.S. 270, 271 (1971)).

[35] *See id.* at 163.

[36] *See Picard*, 404 U.S. at 276-277 ("We simply hold that the substance of a federal habeas corpus claim must first be presented to the state courts.  The claim that an indictment is invalid [and whether the Fifth Amendment grand jury indictment applies to the states] is not the substantial equivalent of a claim that it result in an unconstitutional discrimination [under the Fourteenth Amendment]." (alterations added)).

[37] *See Peterson v. Lampert,* 319 F.3d 1153, 1158 (9th Cir. 2003) ("We therefore join our sister circuits and hold that, for purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issues.").

[38] *Lyons,* 232 F.3d at 669 ("The law of this circuit is plainly that a federal claim has not been exhausted in state court unless the petitioner both raised the claim in state court and explicitly indicated then that the claim was a federal one—regardless of whether the petitioner was proceeding pro se.").

In his second-round habeas petition to the California Supreme Court, Shukry simply alleged that his *appellate counsel* was ineffective for failing to present four enumerated claims (his second through fifth grounds in his Petition to this Court) as violations of Shukry's Federal Constitutional right to due process.  Shukry does not identify which due process rights were infringed or the factual basis for his federal claims.  In order to exhaust a claim, a petitioner must "fairly present" to the state supreme court both the legal and factual basis for the claim.[39]  "[T]he petitioner must . . .  provide the state court with the operative facts, that is, 'all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies.'"[40]  Shukry did neither.[41]

Shukry has failed to exhaust his available state-court remedies with respect to his second, third, and fourth grounds, and they must be dismissed.  This Court has the discretion, but is not obligated, to *sua sponte* stay these proceedings and hold the unexhausted claims in abeyance pending exhaustion in the state courts.[42]  A stay and abeyance is available only in limited circumstances.  First, there must be "good cause for the petitioner's failure to exhaust his claims

---

[39] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted); *Robinson v. Schriro,* 595 F.3d 1086, 1101 (9th Cir. 2010) ("In order to exhaust his claim, Robinson was required to present both the factual and legal basis for the claim to the state court." (citing *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999))).

[40] *Davis v. Silva,* 511 F.3d 1005, 1009 (9th Cir.2008) (quoting *Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir.1958)).

[41] This Court notes that his petition for habeas relief to the California Supreme Court was based upon a single ground—ineffective assistance of appellate counsel.  Although Shukry raises ineffective assistance of trial counsel in his Petition to this Court, he does not assert a ground based upon ineffective assistance of appellate counsel.  Consequently, the question of the ineffectiveness of appellate counsel is not before this Court.

[42] *See Day v. McDonough*, 547 U.S. 198, 209 (2006).

first in the state courts."[43]   Second, even if good cause is shown, a "district court would abuse its

discretion if it were to grant . . . a stay" as to "unexhausted claims that are plainly meritless."[44]

For the reasons set forth below, Shukry's second, third, and fourth grounds are plainly meritless.

      During jury deliberations, a juror disclosed problems the juror thought occurred during

deliberations, including: comparing notebooks; internal polling; one juror, purporting to be an

"expert,"commented on the way the evidence ought to be viewed; discussion of things outside

the jury's experience; and the question of what witnesses were or were not produced at trial.   The

trial court, after extensively questioning the juror in the presence of both attorneys, declined to

further investigate the allegations.   As part of his motion for a new trial, Shukry requested that

juror personal identifying information be provided.   The trial court denied this request as well as

Shukry's motion for a new trial.   Shukry's second, third, and fourth grounds are based upon these

allegations.   The Court of Appeal, after thoroughly discussing applicable California law,

disagreed with Shukry.[45]

      The errors complained of are based upon matters that occurred during jury deliberations.

There is no allegation that the jury, or any juror, was influenced by an external factor.   Nor is

there any allegation or evidence that the conduct of which the juror complained of was the result

of any prosecutorial misconduct.   The decision of the California Court of Appeal not only was

---

    [43] *Rhines v. Weber*, 544 U.S. 269, 277 (2005).

    [44] *Id*. (citing 28 U.S.C. § 2254(b)(2)).

    [45] *People v. Shukry*, No. C046256, 2006 WL 2678437 at *2-6 (Cal. Ct. App. Sept. 19, 2006).   Because the Court of Appeal's analysis is not relevant to the issue presented to this Court, it is not repeated here.

not contrary to established federal law as determined by the Supreme Court, it was consistent

with it.  Under Federal law, the inquiry into the validity of a verdict is severely circumscribed.

> Inquiry into validity of verdict or indictment.—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.  But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.  A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.[46]

"Federal Rule of Evidence 606(b) is grounded in the common-law rule against admission

of jury testimony to impeach a verdict and the exception for juror testimony relating to

extraneous influences."[47]  As the Supreme Court has noted:

> By the beginning of this century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict.  See 8 J. Wigmore, Evidence § 2352, pp. 696-697 (J. McNaughton rev. ed. 1961) (common-law rule, originating from 1785 opinion of Lord Mansfield, "came to receive in the United States an adherence almost unquestioned").
>
> Exceptions to the common-law rule were recognized only in situations in which an "extraneous influence," *Mattox v. United States,* 146 U.S. 140, 149, 13 S.Ct. 50, 53, 36 L.Ed. 917 (1892), was alleged to have affected the jury.  In *Mattox,* this Court held admissible the testimony of jurors describing how they heard and read prejudicial information not admitted into evidence.  The Court allowed juror testimony on influence by outsiders in *Parker v. Gladden,* 385 U.S. 363, 365, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966) (bailiff's comments on defendant), and *Remmer v. United States,* 347 U.S. 227, 228-230, 74 S.Ct. 450, 450-452, 98 L.Ed. 654 (1954) (bribe offered to juror).  See also *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (juror in criminal trial had submitted an application for employment at the District Attorney's office).  In situations that did not fall into

---

[46] Fed. R. Evid. 606(b).

[47] *Tanner v. United States*, 483 U.S. 107, 121 (1987) (citation omitted).

13

this exception for external influence, however, the Court adhered to the common-law rule against admitting juror testimony to impeach a verdict. *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Hyde v. United States,* 225 U.S. 347, 384, 32 S.Ct. 793, 808, 56 L.Ed. 1114 (1912).[48]

In this case, Shukry does not allege any external influence.  The Supreme Court has never held that the considerations during deliberations by a jury, or any individual juror, of juror notebooks, a juror's own experiences, or the fact that the jurors may have talked about witnesses that were not called, violated a criminal defendant's right to a jury trial under the Sixth Amendment.  Indeed, because the Federal Rules of Evidence, which are adopted by the Supreme Court,[49] preclude consideration of a juror's mental processes, any assumption that the Supreme Court did is counter-intuitive.  Any rights that Shukry had on this issue arose under California state law,[50] which differs substantially from federal law.  That is, although it is permissible to challenge a jury verdict on the basis of internal influences on jury deliberations under California law, it is impermissible under federal law.  Thus, this Court may not consider the juror's observations in this proceeding.[51]  As a right existing solely by virtue of state law, whether the state courts properly interpreted or applied that law is beyond the purview of this Court in a federal habeas proceeding.[52]  "[The Supreme Court has] long recognized that a mere error of state

---

[48] *Id.* at 117.  This has been reproduced exactly as it appears in the original.

[49] 28 U.S.C. § 2072(a).

[50] Cal. Evid. Code § 1051(a).

[51] *Harrison v. Gillespie*, 640 F.3d 888, 895 n.4 (9th Cir. 2011) (en banc) (declining to consider juror testimony in a federal habeas case because it did not bear on extraneous influences on jury deliberations).

[52] *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) ("[T]he responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business.").

law is not a denial of due process."[53]  "Federal courts hold no supervisory authority over state

judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[54]

Because his rights, if any, arose solely under state (California) law, Shukry has failed to present a

question of federal constitutional dimension, and is, therefore, not entitled to relief under his

second, third, and, by necessary implication, fourth grounds.

**C.     Merits**

Ground 1:  Ineffective Assistance of Counsel

Shukry contends that trial counsel was ineffective for failing to present evidence of his

innocence, i.e., his testimony that McImely was on the second-story roof, lost his footing and

accidently fell to his death—first falling approximately 10 feet to the edge of the first-story roof,

then toppling to the bushes on the ground.  Shukry argues that he presented this version to his

trial counsel approximately three weeks prior to trial and trial counsel, telling him that "shifting

now is a bad idea," never presented the "truth" at trial.  Shukry presented this issue in his first

habeas petition, together with supporting affidavits reciting the facts.  The Sacramento County

Superior Court denied the writ, holding:

> A petitioner seeking relief by way of habeas corpus has the burden of stating
> a prima facie case entitling him to relief.  (In re Bower (1985) 38 Cal.3d 865, 872.)
> A petition for habeas corpus should attach as exhibits all reasonably available
> documentary evidence or affidavits supporting the claim.  (People v. Duvall (1995)
> 9 Cal.4th 464, 474.)  To show constitutionally inadequate assistance of counsel, a
> defendant must show that counsel's representation fell below a subjective standard

---

[53] *Id.* (internal quotation marks and citations omitted).

[54] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) ("It is beyond dispute that we do not hold a supervisory power over the courts of the several States." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

and that counsel's conduct was prejudicial to the defendant.  (In re Alvernaz, (1992) 2 Cal.4th 924, 937.)   It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions.   (In re Avena, (1996) 12 Cal.4th 694, 722.)   Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different.   (Strickland v. Washington (1984) 466 U.S. 668, 694.)

With respect to the claim of ineffective assistance of counsel for failing to investigate a possible defense, a court must examine the reasonableness of the investigation in light of trial counsel's actual strategy.  (In re Lucas (2004) 33 Cal.4th 682, 785.)   It is not enough for a petitioner to show that counsel could have conducted a more thorough investigation.  The more important issue is whether it was reasonable to "forego further investigation in light of the defense strategy counsel ultimately adopted."  (In re Andrews (2002) 28 Cal.4th 1234, 1255.)   A petition alleging ineffective assistance of counsel based upon the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have.  (People v. Geddes (1991) 1 Cal.App.4th 448, 454.)

[Shukry's] 2003 conviction of second-degree murder and assault on a child was affirmed on Appeal in September 2006 and became final in January 2007. [Shukry] now claims that trial counsel failed to investigate when [Shukry] informed counsel three weeks before trial that the victim, McImely Dearing, had fallen off the roof of his home, which led to his death.  [Shukry] attaches several affidavits from family members corroborating the fact that [Shukry] informed his family and trial counsel about Dearing falling off the roof.  According to these same affidavits, counsel told [Shukry] and his family that pursuing that defense was not advisable because [Shukry] had already given the police two other versions of what happened on the night of December 26, 2002, shortly before Dearing died.  [Shukry] does not attach any declaration from counsel explaining either what investigation he pursued regarding the "roof incident" or why he chose to pursue a different defense. Therefore, the Court must presume that counsel made a tactical choice in determining the nature of the defense.  The Court of Appeal decision discusses, and the petition acknowledges, that [Shukry] initially told the police and Dearing's mother, Carol Roberts, that [Shukry] heard a bump and went upstairs to find Dearing on the floor of his room making a strange sound.  A few days later, he told Roberts and the police that he was spinning Dearing around and struck his head on a counch.  In light of these two prior and conflicting versions of the events leading to Dearing's condition, [Shukry's] revelation of a third version only three weeks before trial and nearly a year after the events would have been viewed very distrustfully by the jury.

Second, it is possible that counsel did conduct some investigation.  Counsel had already prepared a defense attacking the prosecutor's medical experts.  Certainly he was aware of the number and nature of Dearing's injuries and the expert opinions on how those injuries were could have been caused by two one-story falls, as claimed by [Shukry].  There is also no medical evidence in the petition to support [Shukry's] version.  Finally [Shukry] argues that a photo of a shoe print outside Dearing's bedroom window supports his claim.  He contends that he is unable to attach a copy

of the foot print because his appellate attorney has refused to return the trial file. However, even if there were a footprint on the roof, there is no evidence to show that it was Dearing's footprint, that it was a fresh footprint, or that there were any other signs of a *fall*, as opposed to mere presence outside the window.  [Shukry] has not shown that investigation would have corroborated [Shukry's] third version of the events.

Finally, the Court considers the investigation in light of the actual defense presented.  based upon the portions of trial counsel's closing argument attached to the petition, it appears that the defense was that the injuries that caused Dearing's death were not caused at the time that [Shukry] was Dearing's caregiver, but rather that they were caused sometime in the two or three days before his death, during which several people other than [Shukry] were taking care of Dearing.  Although the strategy was not ultimately persuasive, counsel's argument suggests that there was medical evidence to support the strategy and that cross-examination of the prosecution's medical experts was at least partially successful.   Given the circumstances, which included that [Shukry] disclosed to his attorney his third version of the events surrounding Dearing's death only three weeks before his scheduled trial, counsel had prepared a defense which challenged the prosecutor's theory that the injuries causing Dearing's death were caused by [Shukry] while Dearing was in [Shukry's] exclusive care, and there was no physical evidence to support [Shukry's] version of the events, it was not unreasonable for counsel to forego further investigation and instead continue to pursue the intended defense.  [Shukry] has not shown that he is entitled to any relief.[55]

Under *Strickland*, to demonstrate ineffective assistance of counsel, Shukry must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[56]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."[57]  Shukry must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's

---

[55] Lodged Document No. 6 (alterations added).  Except for the petitioner's name, this has been reproduced exactly as it appears in the original.

[56] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[57] *Id*.

ineffectiveness, the result would have been different.[58]  An analysis that focuses "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[59]

*Strickland* and its progeny do not mandate that this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[60]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[61]

---

[58] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985) (citing *Strickland,* 466 U.S. at 694).

[59] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." (citing Strickland, 466 U.S. at 687)); *United States v. Cronic*, 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (citations omitted)).

[60] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[61] 466 U.S. at 689 (internal quotation marks and citations omitted).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[62]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[63]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard.  Rather, the focus is on whether the state-court decision holding that counsel was not ineffective constituted an "*unreasonable* application of federal law[,][which] is different from an *incorrect* application of federal law."[64]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[65]

---

[62] *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009).

[63] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[64] *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[65] *Id.* at 786.

Shukry bears the burden of proving that counsel's trial strategy was deficient.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[66]  "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[67]  "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[68]  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[69]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[70]  The court must then consider those acts or omissions against "prevailing professional norms."[71]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[72]

---

[66] *Strickland*, 466 U.S. at 689 (citation omited).

[67] *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (citing *Strickland*, 466 U.S. at 689).

[68] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[69] *Strickland*, 466 U.S. at 681 (citation omitted).

[70] *Id*. at 690.

[71] *Id*. at 688, 690.

[72] *Id*. at 690.

Shukry has not met this heavy burden.  He has shown no evidence indicating that counsel was unreasonable or ineffective for selecting his chosen trial strategy.  He presented no alternate attorney's determination challenging counsel's decision to pursue the defense chosen.  He has not quoted any "[p]revailing norms of practice as reflected in American Bar Association standards and the like" indicating that counsel acted outside these norms.[73]

Shukry has failed to overcome the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance or that his defense was prejudiced by any alleged omission as required by *Strickland-Hill*.  Based upon the record before it, this Court cannot say that the decision of the Sacramento County Superior Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[74]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Shukry's case within the scope of *Andrade-Williams-Schriro-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established law was not objectively unreasonable.  Shukry has failed to establish that counsel committed any error that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his defense was prejudiced, as required by *Strickland-Hill*.  Shukry is not entitled to relief under his first ground.

---

[73] *Id.* at 688 (citation omitted).

[74] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

Ground 5:  Photographic Evidence

The prosecution introduced into evidence autopsy photographs of the victim's eyeballs

viewed from inside and outside the skull.  Shukry contends that these photographs were

particularly gruesome, and that their introduction was solely for their "shock value" and to

inflame the jury's emotions.  The Court of Appeal rejected Shukry's arguments, holding:[75]

> [Shukry] argues the court erred under Evidence Code section 352 by allowing
> particular autopsy photographs to be introduced into evidence.  He contends these
> photographs were "exceedingly gruesome . . . [¶]  and presented only for its [*sic*]
> shock value and prejudicial effect on the jury."
>
> In an *in limine* motion, [Shukry] challenged the introduction of a number of
> photographs.  The admission of only two of these photographs is challenged on
> appeal.  These two particular photographs depicted the victim's eyeballs and
> dissected retinas.  In particular, the photographs depicted the optic nerves and the
> hemorrhaging along those nerves.  In one of the photographs, the eyes remained in
> the child's skull and the picture was taken from inside the skull and in the other they
> had been removed from the skull and the eyes had been dissected.
>
> The trial court conducted a hearing on the motion at which the prosecution
> explained the relevance of these photographs.   The prosecutor argued the
> photographs demonstrated the "significant rotational injury and a specific type of
> force required to produce the hemorrhaging" seen in the photographs, that is that the
> "amount of force far beyond what you would expect in an accidental bump on the
> head situation."  The photograph in which the eyes were removed from the victim's
> skull demonstrated the specific "placement and location of the retinal hemorrhaging
> within the eye" in a way that could not be seen otherwise.  The specific location of
> the bleeding was again relevant to the manner in which the injury occurred.  The
> nature of the injuries to the eyes was a significant factor in the doctors'
> determinations that the injuries were intentionally inflicted rather than the result of
> an accident.  The testimony of Dr. Fiore bore out this relevance.
>
> The court ruled that the issue of whether the injuries were the result of
> intentionally inflicted injuries or accidentally caused was "90% of what this case is
> about."  The court continued, "I just think that it's a type of thing that sounds worse
> than it is when you look at these photographs.  Hopefully, the jury is going to be able
> to pay attention without being overwhelmed with pity, compassion, prejudice, that

[75] This Court notes that in his appeal Shukry presented his arguments solely upon the
basis of state law.  Therefore, Shukry has failed to exhaust his state-court remedies on the federal
due process question.  Respondent, while raising exhaustion as a defense to the second, third and
fourth grounds, inexplicably failed to raise exhaustion as an affirmative defense to this ground.

type of thing, . . .  [¶]  . . . I'm going to allow the District Attorney to use the autopsy photographs . . . ."

"Under section 352, it is proper to admit relevant evidence when the probative value of that evidence is not substantially outweighed by its prejudicial effect.  [Citation.]  The trial court's decision is reviewed for abuse of discretion.  [Citation.]"  (*People v. San Nicolas* (2004) 34 Cal.4th 614, 664.)  The prosecution is not obligated to prove the details of its case solely through the testimony of live witnesses.  (*People v. Jackson* (1996) 13 Cal.4th 1164, 1216.)  Photographs need not be excluded as cumulative if they are offered to prove facts established by testimony.  (*San Nicolas, supra,* at p. 665.)

In this case, the photographs demonstrated that McImely's injuries were intentionally inflicted and not the result of an accidental bump on the head, as [Shukry] claimed.  Further, the photographs corroborated Dr. Fiore's testimony and opinion on how the injuries were caused.  The trial court did not abuse its discretion in admitting these photographs.  We find no error.[76]

Initially, it is noted that, in addition to not raising exhaustion as a defense to this ground, Respondent did not address it all.  In his Traverse, Shukry argues that, because Respondent did not address this ground, this Court should enter summary judgment in his favor.  This Court disagrees.  Although the Rules Governing Section 2254 Cases in the United States District Courts require a Respondent to address the allegations in the petition,[77] there is no authority for the proposition that, if the Respondent fails to address a particular ground, the petitioner is entitled to summary judgment in his favor on that ground.  To hold that it does would violate two rules governing habeas petitions.

First, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[78]  Second, the Federal Rules of Civil Procedure apply to habeas

---

[76] *People v. Shukry*, No. C046256, 2006 WL 2678437, at *6-7 (Cal. Ct. App. Sept. 19, 2006) (internal footnotes omitted).

[77] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011) ("The answer must address the allegations in the petition.").

[78] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995).

proceedings to the extent that they are not inconsistent with the Rules governing § 2254.[79]  The

court may not automatically grant summary judgment under Federal Rule of Civil Procedure 56

in those cases in which no opposition is filed.  Even in that situation, the court must determine

from the moving papers that the moving party has demonstrated the lack of a triable issue of fact

and that, as a matter of law, judgment must be entered in the moving party's favor.[80]  This Court

must, therefore, address the Petition on the merits and determine whether Shukry has established

entitlement to relief as a matter of law.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional

restraints on ordinary evidentiary rulings by state trial courts."[81]  "The introduction of unfairly

prejudicial evidence against a defendant in a criminal trial . . . does not amount to a violation of

due process unless the evidence is so extremely unfair that its admission violates fundamental

conceptions of justice."[82]  "[T]he Due Process Clause does not permit the federal courts to

engage in a finely tuned review of the wisdom of state evidentiary rules."[83]  In criminal actions,

"[t]he States are free to provide such procedures as they choose, including rules of evidence,

provided that none of them infringes a guarantee in the Federal Constitution."[84]  The Supreme

---

[79] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 12 (2011).

[80] *See* Fed. R. Civ. P. 56(a); *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003); *see also* Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 4 (2011) ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition . . . .").

[81] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[82] *Dunnigan v. Keane,* 137 F.3d 117, 125 (2d Cir. 1998) (citations omitted).

[83] *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (citation omitted); *see also* *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

[84] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state-trial court incorrectly interpreted the state-evidence code in ruling on the admissibility of evidence.[85]  In this context, the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," limiting them to specific guarantees enumerated in the Bill of Rights.[86]  For example, the Supreme Court has barred the introduction of evidence in state court criminal proceedings that violated the Fourth Amendment (search and seizure),[87] Fifth Amendment (confessions),[88] Sixth Amendment (Confrontation Clause),[89] and Sixth Amendment (right to counsel).[90]

On the other hand, in deciding cases involving the Federal Rules of Evidence or federal evidentiary statutes, the Supreme Court is acting in its supervisory capacity over the lower federal courts.[91]  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[92]

---

[85] *Estelle*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

[86] *Id.* at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[87] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[88] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[89] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[90] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[91] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 ("It is beyond dispute that we do not hold a supervisory power over the courts of the several states." (quoting *Dickerson v. United States*, 530 U.S. 428, 438 (2000))).

[92] *Smith v. Philips*, 455 U.S. 209, 221 (1982) (citations omitted).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code § 352, permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."[93]  California employs a similar rule.[94]

In this case, the California Court of Appeal applied the same standards as are applied in federal cases.  Consequently, this Court cannot say that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[95]  Shukry is not entitled to relief under his fifth ground.

---

[93] *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and County of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009) ("The decision to admit potentially prejudicial evidence under Rule 403 is 'committed to the sound discretion of the trial court.'" (quoting *United States v. Blitz*, 151 F.3d 1002, 1008 (9thCir. 1998))).

[94] *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence." (citation omitted)).

[95] 28 U.S.C. § 2254(d);*Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

## V.  CONCLUSION AND ORDER

Shukry is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ

of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[96]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[97]

The Clerk of the Court is to enter judgment accordingly.

Dated: December 15, 2011.

                                              /s/ James K. Singleton, Jr.

                                              JAMES K. SINGLETON, JR.
                                              United States District Judge

---

[96] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[97] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.